UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

INTERNATIONAL ASSET RECOVERY CORP.,
assignee of Lawrence Lee,

                Defendant/Appellant,

 - against -                                                                                05 Civ. 8586 (CM)

THOMSON McKINNON SECURITIES INC.,

                Plaintiff/Appellee.

-----------------------------------------------------------------x

DECISION AND ORDER

McMahon, J:

## Introduction

Appellee Thomson McKinnon Securities Inc. (TMSI) filed for Chapter 11 bankruptcy in 1990, and submitted a liquidation plan under 11 U.S.C. § 1123(b)(4).

Mr. Lawrence Lee was one of the many unsecured creditors of TMSI. Pursuant to the terms of the Plan, he was paid 100% of the allowed amount of his claim – $119,888 – comprising the principal debt plus interest until the date of filing. He was paid no post-petition interest. Mr. Lee subsequently assigned any remaining claim he might have against TMSI to appellant International Asset Recovery Corporation (IARC). The bankruptcy court closed the case in 2002.

During this period, the Comptroller of New York had amassed over a million dollars in cash and securities, all in TMSI's name, in the State's Abandoned Property Fund. In 2004, without TMSI's knowledge, IARC caused a writ of execution to be served on the

Comptroller, seeking to levy against these funds in satisfaction of the unsatisfied portion of Mr. Lee's debt. The Comptroller paid $85,937.68 to IARC in 2004.

Appellee, upon learning of this transfer, moved to reopen the bankruptcy case and filed a third-party complaint seeking the turnover of the Comptroller Assets, including those already seized by IARC. The motion to reopen was granted on April 12, 2005. On July 14, 2005, Bankruptcy Judge Adlai Hardin, after hearing oral arguments in this matter, granted TMSI partial summary judgment on its claims.

IARC appealed Judge Hardin's ruling to this Court pursuant to 28 U.S.C. § 158(a)(1). For the reasons stated below, the bankruptcy court's ruling is affirmed.

## Facts

A. The TMSI Bankruptcy

On March 28, 1990, appellee Thomson McKinnon Securities Inc. (TMSI) filed for Chapter 11 bankruptcy in the Southern District of New York. TMSI was appointed debtor in possession of the estate, giving it the powers of the trustee in administering the estate's assets and disposing of claims against the estate.

On March 30, 1993, TMSI's Amended Plan of Reorganization ("the Plan") became effective. Appellant Exh. 4. The Plan called for the complete liquidation of TMSI, the disposition of its assets, and the distribution of the proceeds to its creditors. See generally id. Chapter 11 liquidations are permitted under section 1123(b)(4) of the Bankruptcy Code ("the Code").

Specifically, the Plan called for the use of all "Disposition Assets" to satisfy TMSI's creditors. The Plan defines Disposition Assets as "assets of any kind of the Debtor on the

Consummation Date;" defined as "the date on which the Confirmation Order becomes a Final Order." Appellant Exh. 4, §§ 1.12, 1.20. The Disposition Assets, and any "Proceeds" thereof, were to be divided into three funds: a Distribution Fund (to be distributed to creditors at the confirmation of the Plan), id. at § 1.23; a Reserve Fund (to be distributed to holders of "disputed claims" – claims disallowed at the time of confirmation, but later permitted after post-confirmation appeal), id. at § 1.34; and a Retained Cash Fund (to fund TMSI's remaining operations), id. at § 1.35. The Plan defines "Proceeds" as any amount gained from the "sale, conveyance, transfer, assignment, liquidation or abandonment" of Disposition Assets. Id. at §§ 1.19, 1.31. The Plan does not refer to assets acquired by other means, including interest or dividends on Disposition Assets.[1]

Claims were divided into ten classes. The relevant classes in this proceeding are Class 7 (unsecured, non-subordinated claims not separately classified by the Plan) and Class 8 (certain subordinated debt). Id. at § 2.1(g)-(h). The Plan provides that:

> Class 7 Claims are impaired; an in full settlement and release of all Class 7 Claims, without interest, the Company shall:
>
> On the Consummation Date, distribute all Available Cash Pro Rata to holders of Class 7 Allowed Claims; and
>
> On each Distribution Date, until such time as all Class 7 Allowed Claims have been paid in full, distribute all Available Cash Pro Rata to the holders of Class 7 Allowed Claims.

Id. at § 3.8. Class 8 Claims were to be compensated only after payment of all Class 7 Claims. Id.

---

[1] The U.C.C. definition of "proceeds" includes "whatever is collected on, or distributed on account of, collateral," and would likely encompass dividends, interest, or other distributions. N.Y. U.C.C. § 9-102 (64) (2001). Whether by design or by accident, the Plan's definition is narrower than that of the U.C.C.

at § 3.9.

The Plan retains jurisdiction in the bankruptcy court "to determine any and all controversies and disputes arising under or in connection with the Plan," id. at § 9.1(c); and "as may... be authorized under the provisions of the Bankruptcy Code or any other applicable law." Id. at § 9.1(i). The Plan also reserves in TMSI "all of the rights, powers and duties of a trustee under the Bankruptcy Code," including the power "to prosecute and defend all actions affecting the Company," and "to do all other things necessary and appropriate to the consummation of this Plan." Id. at § 4.5.

State Street Bank was designated as the Collateral Agent under the Plan and under a subsequent Collateral Agent Agreement dated March 30, 1993. Appellant Exh. 7. Under the agreement, State Street was given a first lien on all "Collateral" of the estate – including "all accounts, general intangibles and inventory, equipment and other goods... all improved and unimproved real property, all bank accounts and all cash and cash equivalents and all proceeds of the foregoing." Id. at § 1(a). "All monies of TMSI, whether now owned or hereafter acquired" were directed to be deposited with State Street in the three Funds required by the Plan. Id. at § 1(b).

By 2002, TMSI had repaid all the Class 7 creditors in full. The remainder of TMSI's assets went to the Class 8 creditors, who were repaid approximately $7 million under the Plan, leaving $131 million in Class 8 claims unpaid. Appellee Br. at 3.

On June 25, 2002, nine years after the confirmation of the Plan, a final decree of bankruptcy was entered. The case was closed on August 2, 2002.

B. The Comptroller Assets

The Comptroller of the State of New York administers the State's Abandoned Property Fund ("the Fund"). Banks, utilities, securities brokers, and other entities are required to turn over "abandoned" accounts to the Fund according to certain statutory requirements. N.Y. Aban. Prop. L. §§ 300 et seq. (2005). The Comptroller maintains records of all abandoned accounts, listed by the type of account, the named owner or account title, the reporting organization, the amount of money (or other asset) in the account, and the account's "dormancy date." Appellant Exh. 10. Owners of listed accounts may file a claim with the Comptroller to have such accounts reinstated; unclaimed accounts pass to the state. N.Y. Aban. Prop. L. § 1406 (2005).

In April and May 1993, during the administration of the Plan, TMSI identified approximately $89,000 in cash, plus certain securities, held in the Fund in TMSI's name. Appellant Exh. 10. Upon receipt of TMSI's claim, the Comptroller turned these assets over to the estate. Id. Since that time, apparently unknown to TMSI, other accounts in TMSI's name have continued to fall dormant. As of July 2005, the Fund held TMSI assets totaling approximately $1.2 million ("The Comptroller Assets").

C. Mr. Lee's Claim

Mr. Lawrence Lee was a holder of a 1987 judgment for $132,373 against TMSI. Appellant Br. at 3. After TMSI filed for bankruptcy, he registered the judgment in this District, timely submitted a claim, and was classified as a general unsecured, or Class 7, claimant. Id. His claim for principal and pre-petition interest was limited by the bankruptcy court to $119,888.[2] In

---

[2] In oral arguments before Judge Hardin, appellant described Mr. Lee's allowed claim as "approximately $200,000.... $187,000 or $190,000." See Transcript of Hearing on July 14, 2005 ("Tr.") at 12. That statement was apparently in error.

1995, Mr. Lee received 100% of his claim in cash. At some point thereafter, he assigned any remaining claim he might have to International Asset Recovery Corporation (IARC).

On August 9, 2004, Mr Lee, through IARC, filed a writ of execution pursuant to New York C.P.L.R. §§ 5225 and 5227 with the Sheriff of Albany County, seeking to levy against any TMSI assets held in the Fund. Appellee Exh. D. TMSI was not notified of this filing. Appellee Br. at 10. The execution stated that, as of March 19, 1990, Mr. Lee held a judgment of $169,900 against TMSI, and that only $119,888 had since been repaid. Id. Neither party can explain where the $169,900 figure came from, but it appears to be the total of the allowed and disallowed portions of Mr. Lee's claim, plus interest.[3]

The Sheriff served the Comptroller, and the Comptroller complied – making four payments, totaling $85,937.68, during 1994. After deducting fees, the Sheriff transferred $81,832.06 to IARC.

D. The Present Action

Sometime thereafter, TMSI became aware of the transfer of funds from the Comptroller to IARC, and the sizable amount of other assets remaining in the Fund. On March 17, 2005, TMSI moved to reopen the bankruptcy case to recover the assets held by the Comptroller, including those assets transferred to IARC. Appellant Exh. 8. IARC opposed that motion.

On April 12, 2005, the Bankruptcy Court issued an order reopening the case. Appellee Br. at 12. IARC did not appeal from that order.

---

[3]IARC later filed a second Execution seeking additional funds from the Comptroller Assets. This second execution might explain why the Comptroller paid $85,937 to the Sheriff on an execution that sought only $50,000. The precise figures are ultimately of no moment.

On April 26, 2005, TMSI filed a Complaint seeking:

    (a)    a declaratory judgment that the Comptroller Assets were part of the bankruptcy estate and so were subject to the plan;

    (b)    directing IARC to return any property received from the Comptroller;

    (c)    directing the Comptroller to turn over any property held in TMSI's name to the estate;

    (d)    requesting the entry of an order of judgment against the Comptroller and IARC for the amount held in TMSI's name;

    (e)    claiming unjust enrichment against IARC and directing them to return the amount of money paid them by the Comptroller.

Id. at 12-13. On June 6, 2005, TMSI moved for partial summary judgment on its complaint. Some Comptroller Assets, termed "negotiable instruments," were excluded from the motion by the plaintiff because its claim to those assets required further fact-finding. Tr. 40.

On July 14, 2005, Judge Adlai Hardin heard oral arguments on the motion and read into the record a decision in favor of plaintiff TMSI. See Tr. 43-51.

IARC now appeals from that decision pursuant to 28 U.S.C. § 158(a)(1) and Bankruptcy Rules §§ 8001 and 8002(a). It raises four issues on appeal:

    (a)    whether TMSI as a former debtor has standing to bring a turnover complaint;

    (b)    whether the bankruptcy court has subject matter jurisdiction over TMSI's third-party complaint against IARC and the Comptroller;

    (c)    whether Mr. Lee retains a claim for post-petition interest against TMSI as a post-confirmation debtor; and

    (d)    whether the Comptroller Assets are property of the estate or property of TMSI as post-confirmation debtor.

**Discussion**

A. Standard of Review

A bankruptcy court's findings of fact "shall not be set aside unless clearly erroneous." Fed. R. Bankr. P. § 8013. Conclusions of law are to be reviewed *de novo*. See In re Arochem Corp., 176 F.3d 610, 620 (2d Cir. 1999).The exercise of the bankruptcy court's equity powers, such as a decision to reopen a closed case, should be overturned only upon a showing that the decision was an abuse of discretion. See In re Candelaria, 121 B.R. 140, 142 (E.D.N.Y. 1990) (internal citations omitted); but see Mendelsohn v. Ozer, 241 B.R. 503, 505-506 (E.D.N.Y. 1997) ("We review *de novo* the proper interpretation of a statute," including 11 U.S.C. § 350(b)).

B. TMSI's Standing

In general, the Code permits turnover proceedings to be brought only by a trustee or debtor in possession. See 11 U.S.C. § 542(b) (2000). TMSI was debtor in possession until confirmation of the Plan in 1993. Normally, the former debtor in possession loses the right to bring turnover actions after the confirmed plan's effective date. In re Ice Cream Liquidation, 319 B.R. 324, 333 (Bankr. D. Conn. 2005); accord Petrowax P.A., Inc. v. C & C Petroleum & Chemicals Group, Inc. (In re Petrowax P.A., Inc.), 200 B.R. 538, 540 (Bankr. D. Del.1996). However, the Code permits the post-confirmation debtor to retain the powers of a trustee if the confirmed plan so provides. See id., see also 11 U.S.C. § 1123(b)(3)(B). In this case, the Plan reserves in TMSI "All of the rights, powers and duties of a trustee under the Bankruptcy Code." Appellant's Exh. 4 at § 4.5.  Such power includes the ability to bring turnover proceedings. Therefore, the language of the Plan is sufficient to give TMSI continued standing to bring post-confirmation turnover proceedings.

C. Jurisdiction Pursuant to 28 U.S.C. § 1334.

Appellant next argues that this Court, and by extension the bankruptcy court, lacks subject matter jurisdiction under 28 U.S.C. § 1334 to hear a complaint brought by a post-confirmation debtor seeking the turnover of assets to the bankrupt estate.

*1. The Bankruptcy Court Has Jurisdiction Over Any Matter Provided For in the Plan.*

By statute, the jurisdiction of the federal courts in bankruptcy is limited to "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b) (2000). The closing of a bankruptcy case lessens, but does not terminate, the reach of federal courts to hear "related" matters under 28 U.S.C. 1334(b). See In re Resorts Int'l, Inc., 372 F.3d 154,165-66 (3d Cir. 2004). Although, in the abstract, there is no post-confirmation estate of the bankrupt, and therefore nothing can be "related to" it, most courts have not read § 1334 so narrowly as to preclude *any* post-confirmation jurisdiction. See id. at 165.

In this Circuit, the bankruptcy court retains jurisdiction over post-confirmation matters only where the Plan itself provides for retained jurisdiction. See In re Johns-Manville Corp. 7 F.3d 32, 34-35 (2d Cir. 1993). In this case, the language of the Plan reserves jurisdiction in the bankruptcy court, "to determine any and all controversies and disputes arising under or in connection with the Plan," Appellant's Exh. 4 at § 9.1(c); and "as may... be authorized under the provisions of the Bankruptcy Code or any other applicable law." Id. at § 9.1(i).

*2. The Present Complaint Is Within the Court's Statutory Jurisdiction.*

Of course, the Plan cannot *retain* subject matter jurisdiction over an action that does not

fall within the court's subject matter jurisdiction under 28 U.S.C. § 1334. But it is well established that § 1334's "related-to" jurisdiction extends to the administration of assets discovered post-confirmation:

> We think it within the power of the court to reopen a bankruptcy proceeding, if satisfied that there are unadministered assets which should be administered for the benefit of the bankrupt. Applications to reopen are almost always made by creditors, but we have no doubt the court may in a proper case exercise its discretion, when the fact is presented by the bankrupt.

In re Graff, 255 F. 241, 242 (2d Cir. 1918).[4]

Section 350 of the Bankruptcy Code, "Closing and Reopening Cases" further supports this rule. "A case may be reopened in the court in which such case was closed to <u>administer assets</u>, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b) (2000) (Emphasis added). The Code clearly intends that the federal courts retain jurisdiction over cases in which new assets of the estate are discovered and must be administered for the benefit of the estate's creditors.

To support its argument that the bankruptcy court lacked subject matter jurisdiction, appellant relies on Falise v. The American Tobacco Co., 241 B.R. 48 (E.D.N.Y. 1999), in which a trust established as part of a confirmed plan of bankruptcy of the Johns-Manville Corp. (an asbestos manufacturer) sought to sue numerous cigarette manufacturers for contributing to the lung problems of asbestos victims. The Falise court found that the bankruptcy court lacked subject matter jurisdiction over state law tort claims against a third party who was not involved in the prior bankruptcy action. See id. at 60. Despite the language of the plan which reserved

---

[4]Graff was decided under the Bankruptcy Act of 1898. However, the Bankruptcy Code of 1978 did not alter this rule. See, e.g., In re Sire Plan, 100 B.R. 690 (Bankr. S.D.N.Y. 1989)

broad jurisdiction in the bankruptcy court, the court ruled that it lacked jurisdiction over a case brought a decade after the end of bankruptcy proceedings, simply because it would infuse the trust with fresh capital. See id. at 59-60.

This case is not Falise. TMSI is not seeking tort damages from a third party for the benefit of a post-confirmation entity. Nor is its action brought against an entity that was not one of its creditors in bankruptcy. Rather, TMSI seeks the turnover of assets, allegedly owned by the bankruptcy estate, for the benefit of its creditors. This issue is "related to" TMSI's proceeding under Title 11, even a decade post-confirmation.

D. IARC's Claims for Post-Petition Interest

Appellant next argues that its claim for post-petition interest on Mr. Lee's debt is enforceable, even though his underlying claim was discharged under the Plan. Despite appellant's novel arguments, Judge Hardin correctly denied the claim.

*1. Appellant Is Not Entitled to Post-Petition Interest*

The general rule regarding post-petition interest is clear: unsecured or under-secured creditors are not entitled to post-petition interest on a pre-petition claim. See 11 U.S.C. § 502(b)(2) (2000); see also United Savings Ass'n v. Timbers of Inwood Forest, 484 U.S. 365, 372-73, 108 S. Ct. 626, 630-31 (1988); In re Chateaugay Corp., 156 B.R. 391, 403-404 (S.D.N.Y. 1993). Interest on an unsecured debt ceases to accrue on the date the debtor files for bankruptcy – a creditor may submit a claim for the principal debt and all pre-petition interest, but not for interest that would have accrued post-filing. See In re Ron Pair, 489 U.S. 235, 248, 109

S. Ct. 1026, 1033-34 (1989).

Appellant relies on one of the few exceptions to the general rule: post-petition interest *may* accrue on any claim that is not discharged in bankruptcy. See Bruning v. United States, 376 U.S. 358, 360, 84 S. Ct. 906, 908 (1964). A debt is non-dischargeable if (1) the Bankruptcy Code so states (i.e., tax debts owed to the government); (2) no plan in bankruptcy is ultimately confirmed; or (3) a confirmed plan leaves a pre-petition claim intact. See Kitrosser v. The CIT Group/Factoring Inc., 177 B.R. 458, 468 (S.D.N.Y. 1995). If a debt is non-dischargeable, interest continues to accrue until the debt is paid, even while the debtor is in bankruptcy. See In re Jaylaw Drug, 621 F.2d 524, 526-27 (2d Cir. 1980) ; In re Johnson Elec. Corp., 442 F.2d 281, 283-84 (2d Cir. 1971).[5]

Appellant's argument runs as follows: Mr Lee had a claim for $119,888 in principal plus pre-petition interest at the time of filing. After filing, his debt somehow split into two: one claim for principal and pre-petition interest, which was subject to the Plan, and another for post-petition interest, which continued to accrue on Mr. Lee's claim. The Plan paid Mr. Lee his allowed claim, but, according to its own terms, discharged only his "Claims, without interest." Appellant's Exh. 4 at § 3.8. Therefore, the third exception above should apply: Mr. Lee's claim for post-petition interest survived discharge under the Plan, and therefore IARC has the right to collect from TMSI as post-confirmation debtor.

Mr. Lee's claim for post-petition interest on an unsecured debt could not possibly

---

[5]Appellant also relies on In re Dow Corning Corp., 270 B.R. 393 (Bankr. E.D. Mich 2001). In that case, the court found that post-petition interest may continue to be calculated as a business expense for tax purposes after a taxpayer has filed for Chapter 11. It says nothing about when creditors are entitled to receive such interest.

"survive," because it never existed in the first place. The pre-petition claim, a general unsecured debt, is not subject to any statutory exemption. A Plan that addressed Mr. Lee's unsecured claim was confirmed, and the debt was repaid in full: $113,888 of principal and pre-petition interest. The Plan did not address the Class 7 Creditors' claims for *post*-petition interest, but only because no such claims existed. The use of the phrase "Claims, without interest" in the Plan, however artless, did not create an obligation to pay otherwise non-existent post-petition interest.

IARC also claims that post-petition interest on the principal continued to accrue, even after confirmation of the Plan and closing of the case. Tr. 9-10. That argument verges on irrational. As Judge Hardin observed, interest cannot accrue on non-existent principal. See id.

E. Title to the Comptroller Assets

Finally, appellant argues that the Comptroller Assets are neither subject to the Plan nor part of TMSI's estate in bankruptcy, because the Comptroller Assets consist of property "created *after* consummation of the Plan, and [therefore] available to creditors whose claims were neither paid in full... nor discharged." Appellant's Brief at 22.

Appellant lacks any standing to make this argument. IARC has no surviving claim against either TMSI or its estate in bankruptcy. Nor does it have any independent claim to the Comptroller Assets. At oral argument, appellant conceded that, absent its claim for post-petition interest, it has no standing to contest title to the Comptroller Assets.

## Conclusion

For the reasons stated above, the ruling of the bankruptcy court issued July 14, 2005, is affirmed. This constitutes the decision and order of this Court.

Dated: December 20, 2005

_____
U.S.D.J.

BY FAX TO ALL COUNSEL